LURIE v. PUBLIC BANK OF NEW YORK.

KRAVZOFF v. SAME.

(Supreme Court, Appellate Term.    January 21, 1910.)

PRINCIPAL AND AGENT (§ 158*)—FRAUD OF AGENT.

Defendant, the agent of a steamship company, sold to one B. a ticket consisting of two parts; one being a receipt for the passage money, and containing a clause that the money would be refunded only on return of the receipt after passage thereon had been canceled, and the other part

being an identification slip, entitling the passenger on presentation thereof to a ticket. B., who was not claimed to have acted as defendant's agent, sold the ticket to plaintiff; defendant not knowing for whom the ticket was purchased. Thereafter B., who had not delivered the ticket to plaintiff, surrendered the same and received the money therefor. *Held*, that defendant was not liable to plaintiff.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 158.*]

Appeals from Municipal Court, Borough of Manhattan, Second District.

Actions by Jake Lurie and by Abraham Kravzoff against the Public Bank of New York. From judgments for plaintiffs, defendant appeals. Reversed, and new trials ordered.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Henry Fluegelman, for appellant.
Alex. B. Greenberg, for respondents.

GIEGERICH, J. The defendant appeals from two judgments rendered in favor of the respective plaintiffs, and it is stipulated that the decision in one case shall apply to the other. The facts herein are substantially undisputed. The plaintiff, in April or May, 1909, purchased from one Budnitsky a transportation ticket, entitling his wife and child to passage from Russia to New York upon the White Star Line. It seems that prior to such purchase, or in contemplation of its sale to the plaintiff, Budnitsky had applied for, and obtained from the defendant, a ticket, and paid the amount required, for the passage of two persons named in said ticket. This transportation ticket consisted of two parts; one being a receipt for the money, and containing a clause stating that the money would be refunded, less certain deductions therein specified, only upon the return of the receipt after passage thereon had been canceled in Europe. The other portion of the ticket was what is termed an "instruction" or identification slip, and is forwarded to the intending passenger, who presents it to the steamship line at the point of embarkation, and after identification receives a ticket entitling him to transportation. Both parts contain the name or names of the passengers. These tickets are issued by the defendant as agent of the White Star Line. There is no evidence that Budnitsky was acting as agent for the defendant in the sale of these tickets, and they are issued by the defendant upon the application of, and payment of the passage money by, any person, and necessarily the name of the person or persons to be transported are inserted therein.

When the ticket in this case was issued, it is not claimed that Budnitsky was acting as agent for the defendant; and the plaintiff's attorney upon the trial stated that he did not claim that Budnitsky was so acting, and there is affirmative proof that he was not the agent of the defendant. When Budnitsky obtained the ticket, he did not inform the defendant that the ticket was for the plaintiff, or that the names inserted therein were those of the plaintiff's wife and child; and it is not proven or claimed that the defendant knew or had any intimation as to who the person was that Budnitsky was purchasing the

tickets for, or who it was, except the mere names inserted therein, which at that time had no significance to the defendant, that it was intended should be the passengers to be conveyed thereunder. Some time after Budnitsky purchased the ticket, he presented the receipt portion of it to the defendant, and asked that the purchase money be refunded. The defendant having paid the money to the steamship company, it notified the company of this application, and thereupon they canceled the ticket and returned the money to the defendant, who in turn paid it over to Budnitsky. It was not until some time after this that the defendant learned that the plaintiff had paid Budnitsky for the ticket, that the passage paid for was for his wife and child, and that Budnitsky had not repaid the money to the plaintiff.

Much of respondent's brief is devoted to matters dehors the record. The defendant is not charged with any fraud or deceit in the matter. So far as it knew, when Budnitsky purchased the ticket, it might have been for some of his own relatives; and when he returned the portion of the ticket, and asked for the refunding of the money, it is in evidence that he said to defendant, as a reason for his request, that he "did not want the people to travel that way." The plaintiff never got any portion of the ticket sold to Budnitsky; the instruction or identification portion being sent directly to the White Star Line office, and the receipt portion evidently being retained by Budnitsky.

It was conceded upon the trial that no part of the ticket was ever delivered to the plaintiff, and there is no proof that he ever attempted to assert any right of transportation thereunder. Budnitsky, if he could be considered as defendant's agent under any circumstances, had an implied authority to return the ticket so long as it remained in his possession, and it is perfectly plain that, so far as the facts appear in this case, the plaintiff has no cause of action against the defendant. If by the mere issuance of a ticket to a purchaser, containing the name of a passenger who is unknown to the seller, entitling such passenger to transportation thereon, the power given to the purchaser to deceive a third person to whom the purchaser intends to dispose of such ticket, or who has previously engaged the purchaser to obtain such ticket, is sufficient to render the ticket seller liable for the fraud or misconduct of the purchaser, who has failed to deliver the ticket or to return the amount paid him therefor, the sale of many kinds of tickets in common use, including mileage books upon our railroads, would be unsafe and dangerous.

The rule invoked by the learned trial justice to support the judgment herein, that as between two innocent parties "the one who has put it in the hands of a third party to cause the damage should be held liable," has no application to the facts in this case, and they are so materially different from those in the case of Schapin v. Auerbach & Goldberg, 117 N. Y. Supp. 159, as to need no comment thereon.

Judgments reversed, and a new trial ordered, with costs to appellant to abide the event.

LEHMAN, J. I concur with Mr. Justice GIEGERICH in his view that there is no evidence of bad faith on the part of the defendant corporation, and no evidence that it had supplied Budnitsky with in-

dicia of title, knowing that he intended to sell something which he did not own, and thereby enabled Budnitsky to defraud the plaintiff. As I view the transaction, the defendant simply entered into a contract with Budnitsky to furnish transportation for two designated persons, and this contract was expressly subject to cancellation by Budnitsky. Subsequently Budnitsky gave notice of his desire to cancel, and the defendant in compliance with that notice returned to Budnitsky the consideration received from him. It appears now that Budnitsky was not the real party in interest to this transaction, but obtained the contract of transportation from the defendant for the benefit of the plaintiff and at his request. The sole question in the case seems to me to be whether or not the defendant had notice that Budnitsky was acting only as agent for another, or that he had assigned the contract. If the defendant had notice of such facts, then it acted at its peril in accepting the notice to cancel without at least requiring the return of the identification slip; if, however, it was justified in dealing with Budnitsky as the real owner of the contract, then it had a right to accept his explanation of its loss.

There is no claim that any direct notice of the facts was given to the defendant; but the respondent seeks to sustain the verdict upon the theory that the defendant, from previous dealings with Budnitsky, must have known that he was a ticket peddler, and was therefore put to an inquiry as to the rights of third parties, and had no right to cancel the contract without the return of the identification slip. The mere fact that Budnitsky on three occasions bought tickets is certainly not sufficient to show the defendant that he was a ticket peddler. Upon a new trial, however, the plaintiff may be able to show additional dealings with the defendant.

The judgment in each case should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

DAYTON, J. (concurring). That plaintiff has been cruelly swindled is beyond cavil. Budnitsky was not unknown to defendant, having bought other transportation from it. Defendant is relieved of liability only on the technical ground of want of proof of actual knowledge that plaintiff was the real purchaser of transportation for his wife and child from Libau, Russia, to New York, for which he paid Budnitsky $61 in installments. It would seem, in common fairness, that defendant, before repaying Budnitsky and canceling the tickets, should have ascertained whether the parties for whom the transportation was specifically engaged consented to this disposition of their rights. Presumably Budnitsky would not devote his own funds for this transportation, and had no further interest in the transaction after he paid $56 to defendant. Besides, the tickets had been forwarded to Libau for those persons on their being there identified by the White Star Line as entitled thereto.

While reluctantly constrained, solely as matter of law, to concur in a reversal of this judgment, without costs, I do not agree that the complaint be dismissed. It is possible that upon another trial defendant may be compelled to produce its books, whereby it may appear that it has more familiarity than is now disclosed with the rights of this

plaintiff and others who have been similarly dealt with. The record here shows disinclination on the part of defendant to reveal this branch of its business. A new trial may demonstrate some form of agency that will compel defendant to refund the $56 to plaintiff, and thus serve as an admonition in this field of industry.